UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOHN G. LABRECQUE,           )
                             )
        Plaintiff,           )
                             )
    v.                       )    2:14-cv-00357-JAW
                             )
SEAN J. STACKLEY[1],         )
                             )
        Defendant.           )

**ORDER GRANTING MOTION FOR EXPEDITED SCREENING AND DENYING MOTION FOR RECONSIDERATION**

The Plaintiff, an employee at the Portsmouth Naval Shipyard, alleges that shortly after he complained to the Equal Employment Opportunity (EEO) Office about age discrimination and was promoted to a supervisory position, he was subjected to retaliation and a hostile work environment. The Navy moved for summary judgment on the claims, which the Court granted. Following the Court's Order, the Plaintiff's counsel withdrew from representation, and the Plaintiff then moved pro se for reconsideration. Although framed as a motion for reconsideration, the Plaintiff's motion is in essence a vehicle to complain about his prior lawyers. Concluding that the gravamen of the Plaintiff's complaint is really about the enacted law, not his former lawyers, the Court concludes that his motion does not state a proper basis for relief under Rule 60(b) and denies the motion for reconsideration.

---

[1] As pointed out by the Navy, pursuant to Federal Rule of Civil Procedure 25(d), Sean J. Stackley, the new Acting Secretary of the Navy and successor to Ray Mabus, is automatically substituted as the named defendant in this case.

## I. PROCEDURAL HISTORY

John G. LaBrecque filed an Amended Complaint on July 27, 2015 alleging one count of retaliation by the Navy under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* *Pl.'s Am. Compl.* (ECF No. 19). The Navy moved for summary judgment on April 25, 2016. *Def.'s Mot. for Summ. J.* (ECF No. 51). The Court granted the Navy's motion on February 16, 2017, *Order on Mot. for Summ. J.* (ECF No. 74) (*Order*), and the Clerk of the Court entered judgment in favor of the Secretary of the Navy and against John G. LaBrecque on the same day. *J.* (ECF No. 75).

On March 2, 2017, Mr. LaBrecque's attorneys filed a motion to withdraw as counsel for Mr. LaBrecque, *Mot. for Leave to Withdraw as Counsel for the Pl.* (ECF No. 76), which the Court granted the following day. *Order Granting Mot. to Withdraw* (ECF No. 77).

On April 12, 2017, Mr. LaBrecque filed a pro se letter motion asking the Court to reconsider its summary judgment order and the judgment against him.[2] *Mot. for Recons.* (ECF No. 80) (*Pl.'s Mot.*). Additionally, on April 17, 2017, Mr. LaBrecque appealed the Court's order and judgment to the First Circuit. *Notice of Appeal* (ECF No. 81). On April 19, 2017, the Navy objected to Mr. LaBrecque's motion for

---

[2] On April 7, 2017, the Court received a letter from Mr. LaBrecque, which for the most part expressed disgruntlement with his prior attorneys. As it was not clear whether Mr. LaBrecque was looking for relief from the Court or was simply providing information to the Court, the Court wrote Mr. LaBrecque with a copy to defense counsel on April 7, 2017 asking him to clarify his intentions. *Letter from John A. Woodcock, Jr. to John G. LaBrecque* (ECF No. 79). The Court also informed Mr. LaBrecque about certain confidentiality requirements and asked him to file a redacted version of his letter, if he wanted the Court to take action. *Id.* On April 12, 2017, Mr. LaBrecque formally moved for reconsideration of the summary judgment order. *Pl.'s Mot.* at 1.

2

reconsideration and requested an expedited screening of the motion.³ *Def.'s Req. for Expedited Screening of Pl.'s Mot. for Recons. and Order Directing Pl. to File a Redacted Version of ECF 80* (ECF No. 86) (*Def.'s Opp'n*); *Mot. for Order for Expedited Screening Pursuant to Rule 62.1* (ECF No. 87).

## II. BACKGROUND

### A. The Order Granting the Motion for Summary Judgment

On February 16, 2017, the Court issued an order granting the Navy's motion for summary judgment. *Order* at 1–72. The Court concluded that Mr. LaBrecque failed to demonstrate any disputes of material fact that would allow a reasonable factfinder to conclude that any of the adverse actions taken against him were causally connected to his EEO age discrimination complaints. *Id.* The Court also concluded that Mr. LaBrecque failed to produce sufficient facts from which a reasonable factfinder could conclude there was severe, pervasive harassment on the basis of age giving rise to a hostile work environment. *Id.*

### B. John G. LaBrecque's Motion to Reconsider⁴

---

[3] The Navy also requested an order directing Mr. LaBrecque to file a redacted version of his motion, which the Court sealed due to personal identifiers and other confidential information.

[4] As pointed out by the Navy, Mr. LaBrecque did not indicate in his motion for reconsideration which rule he is invoking for the relief he seeks. However, because Mr. LaBrecque filed the motion more than 28 days after entry of judgment, the relief afforded by Rule 59(e) is not available. *See* FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment"). Accordingly, the Court construes the motion to reconsider as a motion for relief from judgment or order pursuant to Rule 60(b) which must be made "within a reasonable time" or for certain bases, no more than a year after the entry of the judgment or order. *See* FED. R. CIV. P. 60(c)(1); *see also Mena–Valdez v. E.M. T-Shirts Distribs., Inc.*, 878 F. Supp. 2d 357, 360 (D.P.R. 2012) ("A motion is characterized pursuant to Rule 59(e) or Rule 60(b) based upon its filing date") (citing *Perez–Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 284 (1st Cir. 1993)).

Mr. LaBrecque filed a pro se letter asking the Court to reconsider the summary judgment order and judgment against him. *Pl.'s Mot.* at 1. Mr. LaBrecque attached several documents to the motion, *id.* at 3–25, and explained his reasons for requesting reconsideration. *Id.* at 2. Mr. LaBrecque expressed considerable frustration and dissatisfaction with his prior counsel and emphasized certain points of strenuous disagreement with some of the evidence in the summary judgment record. *Id.* Specifically, Mr. LaBrecque disagreed with his prior counsel's decision not to depose and use the testimony of certain witnesses. *Id.* He was also upset about his prior counsel's failure to present certain evidence regarding an allegedly forged signature on his April 21, 2011 performance appraisal. *Id.* Mr. LaBrecque also included evidence to support his allegation that the Shipyard shredded his doctors' notes and expressed privacy concerns over this act. *Id.* Finally, Mr. LaBrecque expressed dissatisfaction with his prior counsel's failure to press for a trial by jury and to communicate with him throughout the case. *Id.*

### C. The Navy's Motion for Expedited Screening and Opposition

Given that Mr. LaBrecque asked this Court to reconsider the summary judgment order and judgment pursuant to Rule 60(b), and then appealed the order and judgment to the First Circuit shortly thereafter, the Navy requests that the Court expeditiously review Mr. LaBrecque's motion pursuant to Rule 62.1(a)(2). *Def.'s Opp'n* at 4.

The Navy also requests that the Court deny the motion. *Id.* It explains that relief under Rule 60(b) is "extraordinary in nature" and that "motions invoking that

rule should be granted sparingly." *Id*. It contends that Mr. LaBrecque falls short of meeting this standard, arguing that his perceived inadequacies of his former attorneys and their tactical decisions do not warrant relief under the Rule. *Id*. at 4–5.

## III. DISCUSSION

### A. Motion for Expedited Screening

Five days after Mr. LaBrecque filed his motion for reconsideration of the summary judgment order and judgment, he appealed the order and judgment to the First Circuit. *See Notice of Appeal* (ECF No. 81). As the Navy points out, ordinarily the filing of a notice of appeal divests the district court of jurisdiction "to proceed with respect to any matter touching upon, or involved in, the appeal." *United States v. George*, 841 F.3d 55, 71 (1st Cir. 2016) (citations omitted). However, there is an exception to this principle for Rule 60(b) motions. The First Circuit has held that district courts may consider and deny Rule 60(b) motions without seeking leave of the appellate court to do so; a district court need only seek leave if it is inclined to grant the motion. *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 41 (1st Cir. 1979). The First Circuit laid out the procedural rule for these situations:

> [W]hen an appeal is pending from a final judgment, parties may file Rule 60(b) motions directly in the district court without seeking prior leave from us. The district court is directed to review any such motions expeditiously, within a few days of their filing, and quickly deny those which appear to be without merit, bearing in mind that any delay in ruling could delay the pending appeal. If the district court is inclined to grant the motion, it should issue a brief memorandum so indicating. Armed with this, movant may then request this court to remand the action so that the district court can vacate judgment and proceed with the action accordingly.

*Id.* at 42.

This procedure is found in Rule 62.1 of the Federal Rules of Civil Procedure. According to Rule 62.1: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." FED. R. CIV. P. 62.1(a).

Given the current procedural posture of the case, the Court GRANTS the Navy's Motion for Order for Expedited Screening Pursuant to Rule 62.1 (ECF No. 87).

## B.     Motion for Reconsideration

Under Federal Rule of Civil Procedure 60, the Court may relieve a party from a final judgment or order based on: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment being void; (5) the judgment having been satisfied, released or discharged or being based on an earlier judgment that has been reversed or vacated; or (6) any other reason that justifies relief. FED. R. CIV. P. 60(b)(1)–(6).

Relief under Rule 60(b) is "'extraordinary in nature' and, thus, 'motions invoking that rule should be granted sparingly.'" *Fisher v. Kadant, Inc.*, 589 F.3d 505, 512 (1st Cir. 2009) (quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002)). A party seeking relief under Rule 60(b) must persuade the trial court, "at a bare minimum, that his motion is timely; that exceptional circumstances exist,

6

favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." *Id.* "[A] litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17, 20 (1st Cir. 1992).

Mr. LaBrecque does not specify on which bases of Rule 60(b) he seeks relief. However, given his pro se status, the Court will assess his claims under all potentially relevant bases. *See Fisher*, 589 F.3d at 513 ("[P]ost-judgment relief will not normally be denied for the movant's failure to designate the proper subsection of Rule 60(b)"); *see also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) (discussing policy of affording pro se plaintiffs liberal interpretation of pleadings).

### 1. Prior Counsel's Performance

In the motion for reconsideration, Mr. LaBrecque expressed frustration and dissatisfaction with his prior counsel. He explains that he was upset by his prior counsel's decisions not to depose and use the testimony of certain witnesses, the failure to communicate with him throughout the case, the decision to waive a trial by jury, and the failure to present certain pieces of evidence in the record.

Rule 60(b)(1) provides that a party may move for relief from a final judgment because of "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). A party's dissatisfaction with his attorney is sometimes analyzed under the

7

first ground of Rule 60(b) for "excusable neglect." *See, e.g.*, *Nansamba v. N. Shore Med. Ctr. Inc.*, 727 F.3d 33, 38 (1st Cir. 2012). Excusable neglect has been defined as encompassing "inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control." *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)).

Mr. LaBrecque's claims of neglect under Rule 60(b) fail on a number of bases. First, he must demonstrate that his attorneys were in fact neglectful. Here, as will be seen, the record falls far short of a successful claim of professional neglect. Next, as *Nansamba* explains, even if Mr. LaBrecque could demonstrate neglect, the general rule is that an attorney's sins are visited upon his client. *Id.* at 38 (citing *Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992)). Furthermore, if the attorneys were neglectful, Mr. LaBrecque would be required to prove that the neglect was excusable. *Id.* ("Rule 60(b)(1) requires more than a showing of neglect simpliciter; it requires a further showing that the neglect is excusable").

The Court turns first to whether there is evidence that Mr. LaBrecque's attorneys were neglectful. Here, Mr. LaBrecque does not suggest that his prior counsel made an obvious mistake, such as missing a deadline, or that his attorneys made decisions because of circumstances beyond his control. Instead, he stresses that he disagreed with certain of the strategic decisions made by his prior counsel and that his prior counsel failed to communicate effectively with him. Thus, Mr. LaBrecque cannot prevail under a theory of "excusable neglect."

8

As none of the other specific bases listed in Rule 60(b)(1)–(5) appears to apply, the Court analyzes Mr. LaBrecque's contentions about his former attorneys' performance under the catch-all provision. *See Giroux v. Fed. Nat'l Mortg. Ass'n*, 810 F.3d 103, 108 (1st Cir. 2016) ("Rule 60(b)(6) is a catch-all provision that authorizes the district court to grant relief from judgment for any other reason that justifies relief") (internal quotations omitted); *see also Chang v. Smith*, 778 F.2d 83, 85 (1st Cir. 1995) ("[W]hen an attorney's neglect is gross and inexcusable courts have held that relief may be justified under Rule 60(b)(6)").

Specifically, Mr. LaBrecque alleges that the signature on the bottom of his performance review was forged, that his attorneys did not use Michelle Worth, a Shipyard witness whom the attorneys previously represented, that the Shipyard shredded some of his medical records, that the Magistrate Judge's order indicated that Mr. LaBrecque had a right to a jury trial, but his attorneys failed to secure it, that one of his attorneys urged him to take a lower-paying job at the Shipyard and yelled at Mr. LaBrecque's wife when he refused, and that his attorneys had failed to maintain contact with him during the course of the case. *Pl.'s Mot.* at 2.

In general, the Court concludes that, even accepting as true all of the allegations in the motion for reconsideration, Mr. LaBrecque's claim about the inadequate representation of his prior counsel does not justify relief under Rule 60(b)(6). The First Circuit recognizes the principle that all parties are bound by the acts of their attorneys. *Ojeda–Toro v. Rivera–Mendez*, 853 F.2d 25, 30 (1st Cir. 1988).

In discussing the rationale behind this principle, the First Circuit quoted the United States Supreme Court:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Id.* (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). Because Mr. LaBrecque chose his prior counsel to represent him, his later dissatisfaction with certain of his attorney's tactical decisions and conduct does not warrant the extraordinary relief available under Rule 60(b).

### 2. Forged Signature

In his motion, Mr. LaBrecque alleges that the signature on his April 21, 2011 performance appraisal was forged. *Pl.'s Mot.* at 2. He includes as an attachment to the motion Process Instruction 761-904-283N, which states that "[e]rasing, using correction tape or correction fluid, using multiple lines, and writing over previously recorded information are **all prohibited**." *Id.* at 25, *Process Instruction 7610-904-283N*, § 1.2.9.1.

During the summary judgment process, Mr. LaBrecque's attorneys made the Court aware of his contention that the signature on his April 21, 2011 performance appraisal had been forged. In the Plaintiff's Response to the Defendant's Statement of Material Facts, Mr. LaBrecque's attorneys stated:

10

> Plaintiff denies that Mr. La[B]recque's performance evaluation was completed by Mr. Hudson; rather, Mr. La[B]recque's April 2011 performance evaluation was completed by Project Manager Thomas Moody. The evaluation was altered as the original signatory's name (Mr. Moody) has been covered up, and Mr. Hudson's signature is below the actual signature line.

*Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts and Pl.'s Statement of Additional Material Facts* ¶ 24 (ECF No. 69). The Court resolved this factual issue in favor of Mr. LaBrecque:

> The Court agrees that the original signature on the evaluation appears to have been covered up. However, the last letter of the whited-out signature appears to be a "y" and, based on this observation, the Court concludes that between Mr. Hudson and Mr. Moody, it is more likely that the signature is Mr. Moody's.

*Order* at 17 n.21. Thus, contrary to Mr. LaBrecque's impression, his attorneys did in fact raise the signature discrepancy with the Court and the Court ruled in favor of Mr. LaBrecque. Mr. LaBrecque's victory on this point, however, did not carry the day for him. The Court ruled in favor of the Shipyard for reasons unrelated to the signature issue and therefore the signature issue is not a proper basis for the Court to reconsider its summary judgment order.

### 3. Michelle Worth

In his motion for reconsideration, Mr. LaBrecque writes:

> Mr. Lambert did not use Michelle Worth as a viable witness to my case because after she was terminated from the shipyard, Mr. Lambert had represented her for a short time and cancelled his services to her saying he could not meet the deadlines in her case in which he referred her to a [d]ifferent attorney in [O]ld [O]rchard [B]each. Michelle had told me that Mr. Lambert did not even tell this attorney that she was coming, and due to Mr. Lambert's [n]ot meeting time[]lines the attorney could not help her either.

11

*Pl.'s Mot.* at 2. What is missing from Mr. LaBrecque's motion is what precisely Ms. Worth would have added to the summary judgment record if she had been a witness. *Id.* at 1–25. Mr. LaBrecque attached to his motion a highlighted portion of the Amended Complaint:

> In March 2014, Mr. La[B]recque was informed by a co-worker that she was told that she should make a report to Mr. Parry that Mr. La[B]recque "never did anything" on the job site. The co-worker told Mr. La[B]recque that she refused to make this untrue report, and she provided Mr. La[B]recque with a written statement regarding the same. The co-worker was terminated a few weeks later under the guise of a "performance issue"; but it is believed that she was terminated for refusing to make a false report against Mr. La[B]recque.

*Id.* at 24 (quoting *Am. Compl.* ¶ 46(m)). Assuming the unnamed person in subparagraph m of paragraph 46 of the Amended Complaint refers to Ms. Worth, the subparagraph only states that somebody at some point told Ms. Worth to make a false report against Mr. LaBrecque and when she refused, the Shipyard fired her ostensibly for a performance issue.

It is difficult to fit these alleged facts into Mr. LaBrecque's case against the Shipyard because the allegations are too vague to be meaningful. Whatever happened with Ms. Worth has an extremely tangential relationship, if any, to whether the Shipyard retaliated against him because of his EEO complaints or created a hostile work environment for him. Even assuming arguendo that Ms. Worth's experience could have been relevant, Mr. LaBrecque would have to demonstrate that the failure to present her relevant testimony was excusable and, as the allegations about Ms. Worth appear in the Amended Complaint and did not

12

appear in the summary judgment record, there is no evidence that the failure to obtain her testimony was relevant or, if relevant, excusable.

### 4. Doctors' Notes & Privacy Concerns

Mr. LaBrecque includes additional documentation regarding the Questionable Sick Leave (QSL) Discussion, his doctors' notes, and the Letter of Requirement. *Pl.'s Mot.* at 2. He explains that he had submitted doctors' notes to the shop on all occasions but that someone in Code 970 shredded the notes. *Id.* He also explains that he was concerned about his privacy because the notes contain social security information and that he filed a breach case with the Department of the Navy's Chief Information Officer. *Id.*

Mr. LaBrecque does not argue that the notes and emails he attached to his motion are "newly discovered evidence" under Rule 60(b)(2). These documents appear to have been in his possession throughout the course of the litigation and the fact that Mr. LaBrecque handed over doctors' notes between October and December 2012 was included in the summary judgment factual record. *See Order* at 40–41. Therefore the Court assesses whether this evidence justifies relief for any other reason under Rule 60(b)(6). The Court concludes that it does not.

In its Order, the Court concluded that even if Mr. LaBrecque was blameless and had legitimate excuses for his absences, the QSL Discussion and Letter of Requirement were not "materially adverse actions" because they did not carry any material tangible consequences. *Order* at 67. Additionally, the Court concluded that even if the discussion and letter were adverse actions, there was no evidence that the

13

supervisors who held the discussion and issued the letter had any retaliatory motive. *Id.* at 67–68.

In the Amended Complaint, Mr. LaBrecque also alleged that the missing doctors' notes was in and of itself an act of retaliation. *See Am. Compl.* ¶ 46. The Court concluded that Mr. LaBrecque did not supply sufficient facts in support of this theory to generate a trial-worthy issue. *Order* at 62 n.68. However, even if the Court received the additional information regarding the shredding of the doctors' notes, and assuming that this information is true, Mr. LaBrecque would not have a viable retaliation or harassment claim under the ADEA. There is no evidence on the record establishing any sort of causal connection between the shredding of the notes and the EEO complaints. Further, general grievances and employee concerns, such as Mr. LaBrecque's privacy concerns, cannot serve as a basis for an ADEA claim. *See Galouch v. Me. Dep't of Prof'l & Fin. Regulation*, 856 F. Supp. 2d 244, 252 (D. Me. 2012) (citing *Ahanotu v. Mass. Tpk. Auth.*, 466 F. Supp. 2d 378, 395 (D. Mass. 2006)).

### 5.    Trial by Jury

Additionally, Mr. LaBrecque expressed dissatisfaction with his attorney's failure to press for a jury trial. First of all, as already discussed, dissatisfaction with counsel's tactical decisions is not ordinarily a basis for Rule 60(b) relief. More importantly, under the law, "federal employees do not have the right to jury trial available to private section ADEA claimants."[5] *Nowd v. Rubin*, 76 F.3d 25, 27 (1st

---

[5]    Mr. LaBrecque attached to his motion a partial copy of Magistrate Judge Rich's August 4, 2015 Report of Hearing and Order Re: Status in which the Magistrate Judge noted that "The plaintiff shall inform the court in writing no later than December 4, 2015, whether he continues to press his demand for trial by jury." *Pl.'s Mot.* at 13 (quoting *Report of Hr'g and Order Re: Status* at 2 (ECF No. 21))

Cir. 1996) (citing *Lehman v. Nakshian*, 453 U.S. 156, 160–61 (1981)). Mr. LaBrecque's prior counsel may not be faulted for failing to claim a legal right that Mr. LaBrecque did not have under the law. Third, the Court granted a motion for summary judgment in favor of the Navy as a matter of law and thereby concluded that Mr. LaBrecque had not generated a factual issue that required resolution by a factfinder and therefore whether the factfinder would have been a jury (which by law it would not) or a judge (which by law it would) is moot.

### 6. Lower-Paying Job

It is difficult to place in context Mr. LaBrecque's complaint about one of his attorneys urging him to take a job in code 970 for less money and then becoming irritated when Mr. LaBrecque refused to do so. *See Pl.'s Mot.* at 2. However, the fact that the Court ultimately ruled in favor of the Shipyard suggests that Mr. LaBrecque's former attorney may have been acting prudently in urging him to take the job in code 970 even though it paid less money.

### 7. Attorney Contact

---

(*Status Order*). If Mr. LaBrecque believes that the Magistrate Judge's order suggested that he did have a right to a jury trial, he is mistaken.

The Court suspects the jury trial issue arose because Mr. LaBrecque's Complaint claimed the right to trial by jury. *Compl.* at ¶ 13 (ECF No. 1). The original Scheduling Order dated December 2, 2014 simply indicated: "<u>Jury Trial:</u> Demanded." *Scheduling Order* at 1 (ECF No. 6). After Mr. LaBrecque filed his Amended Complaint on July 27, 2015, the Magistrate Judge issued an order on August 4, 2015 clarifying the status of certain issues, including whether Mr. LaBrecque did in fact have a right to a jury trial. *Status Order* at 2. On December 4, 2015, Mr. LaBrecque's counsel filed a notice with the Court withdrawing the jury trial demand. *Notice of Intent to Not Press Jury Trial Req.* at 1 (ECF No. 29).

Mr. LaBrecque's lawyers' determination that he did not have a right to trial by jury is entirely consistent with the Court's understanding. The Magistrate Judge's order did not suggest that Mr. LaBrecque had a right to trial by jury; it only required Mr. LaBrecque to notify the Court whether he was continuing to press his claim that he had such a right by a date certain.

It is unfortunate that Mr. LaBrecque feels that his former lawyers did not communicate with him as regularly as he would have liked. But this allegation has nothing to do with the merits of the Court's ruling on the motion for summary judgment.

## IV. CONCLUSION

The Court GRANTS the Navy's Motion for Order for Expedited Screening (ECF No. 87). After conducting the screening, the Court DENIES Mr. LaBrecque's Motion for Reconsideration (ECF No. 80).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of April, 2017